October and November Term, 1881, No. 214.

## Shreve *et al. versus* Wheeler.

1. Where a judgment creditor sought to set aside a prior conveyance of the land by the debtor, on the ground that it was accompanied by an unrecorded defeasance, which made the transaction an unrecorded mortgage, the fact that the creditor, before the making of the contract upon which he obtained judgment, had himself made payments on behalf of the debtor to the alleged mortgagee, with the request that they be indorsed upon the contract of defeasance, was sufficient notice to put him upon inquiry, if it did not amount to actual knowledge of the contents of the instrument.

2. It was not error for the Court to charge that the right of the judgment creditor probably began when he entered judgment, there being no evidence to show that his debt was contracted at any time before the judgment was entered.

3. Nor was it error to charge that the judgment creditor was bound to know, as a matter of fact, that the vendee had the legal title, because the deed of the latter was upon record, the Court having elsewhere charged the jury that this record was not notice of the defeasance.

ERROR to the Court of Common Pleas of *Crawford County.*

Ejectment, by Silas Wheeler against O. H. Perry Shreve and Ezra Cooper, to obtain possession of sixty-four acres of land in Bloomfield township in the said county.

Upon the trial in the Court below the following facts appeared:

On the 8th of October, 1833, Israel Shreve and Elizabeth, his wife, conveyed the land in dispute to Perry Shreve, the defendant, for $15, and upon the further consideration " that Barzilla Shreve and Nancy Shreve, his wife, parents of the above-named Perry, shall have the use and benefits and profits of all houses, cleared lands, etc."

January 1st, 1851, O. H. Perry Shreve and Susannah, his wife, by deed, duly acknowledged and recorded, sold the land for $650 to Israel Shreve, 3d, subject to the rights of Barzilla and Nancy Shreve.

The testimony of O. H. Perry Shreve, and his son James Shreve, as to this deed was that it was given as security for signing an obligation which was afterward paid off by Perry, that subsequently Israel, 3d, held the deed to keep other parties off, admitting that Perry owned the land, and that Perry farmed it, leased it for oil, and received the money and built a mill on it.

On the other hand Israel, 3d, for plaintiff testified that he was the owner, having himself paid three notes for $600 given by Perry and his father

There was no reconveyance from Israel, 3d, to Perry.

November 28th, 1868, Israel Shreve, 3d, and Lidia M., his wife, in consideration of $1500, granted and conveyed the land in question by an absolute deed to the plaintiff, Silas Wheeler. The deed was duly recorded December 1st, 1868.

Two days after the execution of this deed, November 30th, 1868, the plaintiff entered into an agreement with O. H. Perry Shreve, which provided that if the latter should pay, November 30th, 1869, $525 ; November 30th, 1870, $487.50; November 30th, 1871, $450; and November 30th, 1872, $412.50, and all the taxes and assessments, he, Wheeler, would convey the land to Perry by as good and perfect a title as he had received it from Israel, 3d, the agreement to be void on failure of Perry to pay the payments and taxes, and meanwhile Perry to have the possession, and to be entitled to the income and profits.

This instrument was not recorded. With reference to these papers Perry Shreve testified :

I had a business transaction with Silas Wheeler, the plaintiff, about November 30th, 1868 ; I hired some money of him, about $1500, I think ; I was to pay, I think 9 per cent.

I secured that loan by giving him a deed of the sixty acres of land. He gave me an article (identifying the agreement of November 30th, 1868). The deed came from Israel Shreve, my brother; I was to give him (plaintiff) a deed for the land; that is the way I was to secure it. When I paid him up I was to make him the article back, and get a deed as good as he got.

This testimony was corroborated by that of James Shreve.

The plaintiff testified:

I purchased the land in controversy from Israel Shreve; I purchased the land in 1868, in November; O. II. P. Shreve said the land belonged to Israel Shreve; he said if I would buy it of Israel, he, O. H. P. Shreve, would buy it of me. O. H. P. Shreve did not intimate to me that he had any interest in the land. On the contrary, he told me that Israel owned it.

*Israel Shreve*, for the plaintiff, testified:

I conveyed the land; I deeded it to Silas Wheeler; $1500 he gave me for it; the bargain was made at my house; Wheeler came and stayed all night with me; I cannot tell exactly how much he paid me in hand at the time, excepting $100; I know pretty near what the note was against me,— a little over $700; I took that and a note; he then came to me in Franklin township and lifted the note and paid me the money.

Upon the back of the agreement of November 30th, 1868, were indorsed a number of payments, among which were the following:

" May 6th, 1869, received fifty dollars at the hands of E. Cooper, to apply on this contract. (Receipt given.)
                                              " S. WHEELER."

" June 21st, 1869, received fifty dollars at the hands of E. Cooper. (Receipt given.)                    S. WHEELER."

A receipt produced by defendant, Perry Shreve, upon call, was as follows:

                                    "UNION, June 21st, 1869.
" Received of O. H. P. Shreve, at the hands of E. Cooper, fifty dollars to apply upon land contract.
" $50.                                        SILAS WHEELER."

On the 11th of July, 1871, Ezra Cooper, one of the defendants, entered up two judgments against O. II. P. Shreve *et al.*, for $250 each, upon one of which execution was issued, and levy made upon the land in dispute as the property of

[Shreve *et al. v.* Wheeler.]

O. H. P. Shreve. The land was sold, October 31st, 1871, to Cooper, and he obtained therefor a sheriff's deed, duly executed and recorded. Cooper then leased the land to O. H. P. Shreve, who was in possession at the time of the service of the writ.

It was contended on behalf of the defendant, Cooper, that the deed of November 28th, 1868, and the agreement of November 30th, 1868, together constituted a mortgage, and the separate defeasance not being recorded, the subsequent sheriff's sale conveyed to him a title discharged from the lien.

To show knowledge and notice on the part of Cooper of the nature of the transaction, plaintiff gave evidence as follows:

*Israel Shreve*, 3d, testified:

" Question. Did you know of a contract of Wheeler to sell this land to your brother, Perry?

" Answer. Nothing particular about it; nothing more than my brother said he was going to make a contract with him to get it back at the start; but afterwards the contract was assigned to me.

" Q. Do you know of Cooper paying money on it?

" A. Yes, sir; I was there once when Cooper paid,—I think it was $50, which is the only time I remember of his being there.

" Q. Who did he pay the money to?

" A. He paid it to Silas Wheeler.

" Q. Who was it for?

" A. For Perry Shreve.

" Q. What for?

" A. He said he wanted to pay it in; he said he wanted to help Perry, and he would pay that much on the contract; I do not know whether the contract was there, or whether he agreed to put it on as soon as he got home.

" Q. What was said about what the contract was?

" A. The contract of this farm from Wheeler to Perry Shreve.

" Q. You say that was talked about in the presence of Cooper and Mr. Wheeler?

" A. Yes, sir."

*Silas Wheeler*, the plaintiff below, testified as follows:

" Ezra Cooper paid me $50 on May 6th, 1869, as shown on the contract. He paid me in his office in Union. He also paid me $50, June 21st, 1869, as indorsed on the contract. I gave Cooper receipts at the time for the amount paid, and Cooper also requested me to indorse the payments on the contracts, and Cooper said he was making the payments for Perry Shreve. I think I had a copy of the contract with me, but

[Shreve *et al. v.* Wheeler.]

am not sure. We did not talk particularly about the contract, only that he (Cooper) wanted me to make the credits upon the contract. When Cooper made the payments he knew I had bought the farm.

" Question. Why do you say Cooper knew the contents of the contract between you and Shreve?

" Answer. I did not say that Cooper knew all the contents of the contract; he knew there was such a contract or he couldn't have wanted me to make the indorsements upon it.

" Q. Did you tell Cooper what the contract was about at the time you say he paid you money on it, or before that?

" A. I think I told Cooper I had given Perry Shreve a contract the first time he made a payment.

" Q. Did Cooper tell you what the contract was about on which he was paying you the money?

" A. I think he did.

" Q. What did Cooper say when he paid you the money; can you give his words?

" A. He desired me to put it on the contract.

" Q. You had not the contract with you, had you?

" A. I don't know whether I had the contract with me or not; I gave him a receipt, and agreed to put it on the contract."

Defendants produced several witnesses, who testified that the general reputation of Israel Shreve, 3d, for truth and veracity was bad

Counsel for the defendants asked the Court to charge the jury, *inter alia :*

5. That there is no evidence in this case showing that at the date of the entry of the Cooper judgment and the sheriff's sale to Cooper, that he had any notice of the agreement between the plaintiff and O. H. P. Shreve in relation to borrowing money and accepting the deed from Israel Shreve.

7. That the recording of the deed from Israel Shreve to Wheeler, for the land in question, was not sufficient to affect Cooper with notice of the fact that the deed was taken to secure a loan; and that when money is loaned, and a deed is taken to secure such loan, the recording of such deed is not notice of the real character of the transaction.

The Court declined the fifth point, affirmed the seventh, and charged the jury, *inter alia :*

" The defendant alleges that this transaction—the purchase by Wheeler from Israel Shreve—was practically and substantially from O. H. P. Shreve, and the giving of the article and repurchase was to cover up and hide the real transaction, which was simply the loan by Wheeler to Perry Shreve of $1500; that this was simply a contract by which

Wheeler was to be repaid that loan.   The deed from Israel Shreve and wife to the plaintiff, dated the 28th of November, 1868, and the article of agreement dated the 30th of November, 1868, are not precisely simultaneous, but explained by the testimony of Perry Shreve himself, and if believed by you, then it is sufficient to convert this transaction (the giving of the deed and the giving of the article) into what the law calls a mortgage.   The Supreme Court have decided so in this case, provided you believe the evidence given by Perry Shreve, as contended for on the part of the defendant.   This being a mortgage, however, would not prevent Silas Wheeler from recovering the balance of the purchase-money from O. H. P. Shreve, if Ezra Cooper had not come upon the scene.   And he comes upon the scene in this way :

"In 1871, some three years after the date of this article, while Shreve was paying upon it, Cooper obtained two judgments against O. H. P. Shreve, and issued execution and levied upon the sixty-four acres and bought it in at sheriff's sale, and the sheriff made a deed to him November 7th, 1873.   Cooper claims that he had no notice of this transaction, and that he bought free and discharged from this mortgage, being unrecorded, as it was ; and that he can hold this land as against Wheeler, Shreve, or any one else.

"So he can, provided you find that he had not notice of the real state of the transaction, to wit, that this was a mortgage, if you find really that it was a mortgage.

\*.        \*        \*        \*        \*        \*

["You will bear in mind that Cooper's right begins when he entered judgment ; at all events, it became perfect at the time he became a purchaser at sheriff's sale.   If he purchased without notice of any of this transaction, the Supreme Court have said he purchased free and clean of that parol agreement 'as testified to by Perry Shreve.   He was bound to know, as a matter of fact, that Wheeler had the legal title, because Wheeler's deed was upon record.]

"If he knew that Wheeler had an agreement to reconvey the land to Perry, and that he had not been fully paid, and that it constituted a mortgage,—that is, a parol mortgage, such as the Supreme Court have said it constituted,—then he was bound to take notice, the same as if the article was put upon record ; and he would be subject to what equities Silas Wheeler had, and would have to pay the balance of the purchase-money Wheeler claims."

Counsel for defendants excepted to the ruling upon their fifth point, and to that part of the charge within brackets.

March 9th, 1881, verdict for plaintiff, "the land described

, [Shreve *et al. v.* Wheeler.]

in the writ to be released upon the payment of $895 in six months from this date." Judgment upon the verdict.

Defendants took out a writ of error, assigning as error the rulings of the Court as above.

*William R. Bole* and *J. W. Sproul.*

The evidence clearly showed that Whee.er's deed was, in fact, a mortgage. Every element of a loan was present in the transaction, and every element of a sale was wanting.

The real question in the case was, did Cooper have notice of the fact of this parol mortgage at the time the judgment-notes were given him by O. H. P. Shreve?

The evidence relied upon is that of Silas Wheeler. The impressions of a witness as to a naked fact or his belief as to the probability of an event having happened is not evidence: Carter *v.* Connell, 1 Wh., 392; Carmalt *v.* Post, 8 Watts, 406.

Inference is not admissible: Given *v.* Albert, 5 W. & S., 337; Woodburn *v.* Banks, 5 W. & S., 449.

That portion of the charge excepted to was equivalent to instructing the jury that the recording of the deed from Shreve to Wheeler was notice to Cooper. An absolute deed and a defeasance made at the same time constitute a mortgage; and if the defeasance be not recorded, it is considered as an unrecorded mortgage and postponed to a subsequent judgment, though the deed is duly recorded: Manufacturers' and Mechanics' Bank *v.* Bank of Penna., 7 W. & S., 335; Friedley *v.* Hamilton, 17 S. & R., 70; Wilson *v.* Shoenberger's Executors, 7 Casey, 295; Corpman *v.* Baccastow, 3 N., 363; Paige *v.* Wheeler, 11 N., 282.

If Cooper's debt was contracted without notice of the parol mortgage, his right to priority would not afterwards be affected. The Court was therefore wrong in saying his right begins when he entered judgment: Britton's Appeal, 9 Wr., 172; Hulings *v.* Guthrie, 4 Barr, 123; Uhler *v.* Hutchinson, 11 Harris, 110.

*Joshua Douglass* for defendant in error.

When parol proof is relied upon to show that a deed absolute in form was intended as a mortgage, it must be clear and convincing: Todd *v.* Campbell, 8 Casey, 250; Insurance Co. *v.* Austin, 6 Wr., 257; Payne's Adm'r *v.* Patterson's Adm'r, 27 P. F. Smith, 134; Moore *v.* Small, 7 Harris, 461.

Treating the contract as a mortgage, the payment of the instalments and the receipts show that Cooper knew the facts two years before his debt was contracted. The purchaser of an equitable title must stand or fall by the case of the person from whom he purchased: Chew *v.* Barnet, 11

[Shreve *et al. v.* Wheeler.]

S. & R., 389 ; Whitfield *v.* Fausset, 1 Vesey, Sr., 387 ; Rhines
*v.* Baird, 5 Wr., 256 ; Reed *v.* Dickey, 2 Watts, 459 ; Kramer
*v.* Arthurs, 7 Barr, 165.

A purchaser with notice is bound : Jaques *v.* Weeks, 7
Watts, 261 ; Dougan *v.* Blocher, 12 Harris, 28.

The opinion of the Court was delivered, January 9th, 1882,
by GREEN, J.

In this case the learned Court below left to the jury, with
the most precise and emphatic instructions, the question
whether the transaction between Perry Shreve and Wheeler
was a contract of sale or a loan. The jury were told that
if they found it to be in reality a loan, then in legal effect
the papers executed and delivered between the parties con-
stituted a mortgage, and as the paper thus treated as a de-
feasance was unrecorded, it would be an unrecorded mort-
gage, by which Cooper would not be bound unless he had
notice. If he had notice he would be bound by it, and must
pay to Wheeler the remainder of the mortgage-money. In
this view of the legal and equitable rights of the parties
there was clearly no error, nor is it claimed that there was,
on the part of the plaintiff in error. The jury has found the
facts against the defendant. Under the charge they must
have found either that the transaction was in reality a sale,
as the form of the papers would indicate, or if it was a mort-
gage, that Cooper had notice of it. As this finding in either
aspect involves only a question of fact, and was based upon
sufficient testimony to support it, the matters assigned for
error are extremely limited in number and much confined in
their character. There are but two of them. The defend-
ants by their fifth point asked the Court to say that there
was no evidence that Cooper had notice, at the date of en-
tering his judgment, of the agreement between Wheeler and
Perry Shreve in relation to borrowing money and accepting
the deed from Israel Shreve.

This the Court declined to do, but left the question to be
determined by the jury. In this we think there was no
error. The deed from Israel Shreve and wife to Wheeler of
November 28th, 1868, in express terms passes the legal title.
It was in the ordinary form of a deed in fee simple without
condition or qualification, and on the face of the papers Israel
Shreve was at that time the unquestioned owner of the legal
title.

The next paper, in the course of the title, was a written
contract, dated November 30th, 1868, signed by Wheeler and
Perry Shreve, stipulating in terms for the sale and convey-
ance by the former to the latter of the land in dispute, upon

the payment of specified sums of money at definite times. On the part of the defendants it is alleged that these sums of money, instead of representing the purchase-money of the land upon an independent contract of sale, represented in reality a loan of $1500 previously made by Wheeler to Perry Shreve, and the interest thereon, and hence that the agreement of sale of November 30th, 1868, constituted in legal effect a defeasance to the absolute deed from Israel Shreve to Wheeler, dated November 28th, 1868. Supposing this to be so, was there any evidence in the case that Cooper, the judgment creditor of Perry Shreve, had notice, at the time of entering his judgment, of this alleged contract of defeasance? That is the only question raised by the first assignment of error. Israel Shreve, 3d, the grantor in the deed to Wheeler, testified as follows:

(His Honor then read the testimony of Israel Shreve, 3d, and Silas Wheeler upon this point and the receipts.)

Mr. Cooper, being a party to the suit, and most essentially interested in its result, made no denial of the foregoing testimony.

In this situation of the evidence it would have been manifest error for the Court to say there was *no* evidence [notice ?] of the agreement between Wheeler and Perry Shreve in relation to borrowing money and accepting the deed from Israel Shreve. Here was direct and uncontradicted testimony to the effect that Cooper had, as Perry Shreve's agent or friend, paid money on the very contract which is alleged to create, in part or in whole, the defeasance relied upon. There was clearly sufficient notice to put Cooper upon inquiry, if not actual knowledge, of the contents of the contract. Whether the agreement be treated as a contract of sale, or as part of a paid contrivance for a loan, is immaterial, for in either event Perry Shreve's title was not to be completed till the money was all paid, and that was sufficient to charge Cooper with the obligation of such payment if he took the title after knowledge of the written contract. With the credibility of the witnesses we have nothing to do, and suggestions on that subject are out of place here; the meaning, the truthfulness, and the effect of the testimony, as applicable to the true relations of the several parties, were exclusively for the consideration of the jury.

As to the second assignment we can see no error in the statement by the Court that " Cooper's right begins probably when he entered judgment," for the reason that there is not a particle of evidence on this record to show that his debt was contracted at any time before the judgment was entered. It is entirely possible that the judgment was entered imme-

[McCarthy *et al. v.* De Armit.]

diately after the debt was contracted, and there is nothing in the case upon which we can base a contrary assumption. The language of the judge, as quoted in the specification, is qualified by the use of the word " probably," and therefore it is not a positive assertion as to the date of the inception of Cooper's right, though it might well have been so under the evidence. We do not think the remaining matter of this specification is fairly subject to the criticism made by the learned counsel for the plaintiff in error. The Court did not say or intimate that the recording of the deed from Israel Shreve to Wheeler was notice of the defeasance, nor of anything more than the mere fact of the deed itself. On the contrary, in the answer to the defendant's seventh point, and again in the general charge, the Court distinctly told the jury that the record of the deed was no notice whatever to Cooper of the parol mortgage, and that Cooper was in that event not bound by anything appearing on the record. This, we think, was a correct and sufficient expression of the rights of Cooper in the premises, and therefore, seeing no error in the record,

The judgment is affirmed.